UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| YOVANY RUIZ PRIMERO, | ) |
| Petitioner | ) |
| v. | ) |
| PATRICIA HYDE, Acting Director of Boston Field Office, United States Immigration and Customs Enforcement, *et al.* | ) C.A. No. 25-cv-11442-IT ) ) ) |
| Respondents. | ) |

## RESPONDENTS' OPPOSITION TO PETITIONER'S HABEAS PETITION

Respondents, by and through their attorney, Leah B. Foley, United States Attorney for

the District of Massachusetts, submit this opposition to Petitioner's Yovany Ruiz Primero

("Petitioner") Habeas Petition. Doc. No. 1. Respondent responds to the Petition as contemplated

by Rules 4 and 5 of the Federal Rules Governing Section 2254 cases and in accordance with the

Court's Service Order.[1]

## INTRODUCTION

Petitioner is a twenty-two-year-old native and citizen of Guatemala currently subject to a

final order of removal. *Id.,* ¶ 17. His detention by U.S. Immigration and Customs Enforcement

("ICE") for purpose of effectuating his final order of removal is fully supported by the

Immigration and Nationality Act ("INA") and the Constitution.

---

[1] *See* Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition…"); *Vieira v. Moniz*, No. CV 19-12577-PBS, 2020 WL 488552, at *1 n.1 (D. Mass. Jan. 30, 2020) (evaluating the Government's response to habeas petition under Section 2254 Rules).

Petitioner is detained pursuant to 8 U.S.C. § 1231(a)(6) which authorizes ICE's detention

pending effectuation of a removal order.  The Supreme Court has held that detention pursuant to

Section 1231(a)(6) is presumptively reasonable and constitutional for six months to allow

enforcement of a removal order.  *Zadvydas v. Davis*, 533 U.S. 678 (2001).  Here, with Petitioner

detained for less than two weeks, his constitutional challenge to his detention fails.  *See*

*Rodriguez-Guardado v. Smith,* 271 F. Supp. 3d 331, 335 (D. Mass. 2017) ("As petitioner has

been detained for approximately two months as of this date, the length of his detention does not

offend due process.").

Petitioner's claim that his detention violates due process because he had previously been

approved for Special Immigrant Juvenile ("SIJ") status and accorded the discretionary privilege

of deferred action also fails.  SIJ approval does not provide any lawful status, prohibit detention,

nor bar effectuation of a removal order.  As USCIS explains, "SIJ classification does not render a

noncitizen lawfully present[] [and] does not confer lawful status."

https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20220307-

SIJAndDeferredAction.pdf, Policy Alert-2022-10, *Special Immigrant Juvenile Classification and*

*Deferred Action*, March 7, 2022.  Similarly, deferred action "does not provide lawful status" and

can be terminated at USCIS' discretion at any time.  https://www.uscis.gov/policy-

manual/volume-6-part-j-chapter-4 Chapter G, *Deferred Action*, (last accessed May 22, 2025).

Dismissal of this Petition is also required because this Court lacks jurisdiction to interfere

with ICE's removal of Petitioner per 8 U.S.C. § 1252(g) which bars district court review of any

"decision or action by [ICE] to … execute removal orders."  *Compere v. Riordan,* 368 F. Supp.

3d 164, 171 (D. Mass. 2019) (Explaining that because petitioner is "subject to a final order of

removal and he seeks to enjoin ICE from enforcing that order … [h]is claim for injunctive relief falls, therefore, directly within the jurisdictional bar set by Congress.").

## BACKGROUND

### A. Petitioner's Immigration History.

Petitioner is a native and citizen of Guatemala who entered the United States without inspection or admission near El Paso, Texas on November 9, 2018. *See* Declaration of Assistant Field Office Director, Keith Chan ¶¶ 7-8, attached as Exhibit A. Petitioner was encountered by U.S. Customs and Border Protection and issued a Notice to Appear in removal proceedings as he was inadmissible to the United States under 8 USC § 1182(a)(6)(A)(i). *Id.*, ¶¶ 8-9.

Petitioner failed to appear at two consecutive immigration court proceedings: December 18, 2019 and January 22, 2020. *Id.*, ¶ 10. On the latter date, an Immigration Judge issued an *in absentia* removal order. *Id.* On or about September 27, 2021, Petitioner filed a Moton to Reopen his removal proceedings which was denied by an Immigration Judge on August 17, 2022. *Id.*, ¶ 11. Petitioner did not appeal the denial of his Motion to Reopen to the Board of Immigration Appeals. *Id.*

On September 7, 2022, U.S. Citizenship and Immigration Services ("USCIS") approved Petitioner's I-360 Special Immigrant Juvenile Petition. *Id.*, ¶ 12. USCIS also issued Petitioner with deferred action on that date. *Id.*

On May 14, 2025, ICE ERO Boston arrested Petitioner in Waltham, Massachusetts after he was encountered as a result of an enforcement action targeting a third party. *Id.*, ¶ 13. Petitioner is currently detained at the Plymouth County Correctional Facility pursuant to ICE's detention under 8 U.S.C. § 1231(a). *Id.*, ¶ 15. On, May 23, 2025, ICE contacted USCIS

3

concerning Petitioner's deferred action and requested that USCIS terminate his deferred action so ICE can effectuate Petitioner's final order of removal to Guatemala. *Id.*, ¶ 14. ICE routinely removes individuals with final orders of removal to Guatemala. *Id.*, ¶ 16.

### B. Petitioner's Habeas Petition.

Petitioner filed his Petition on May 21, 2025 claiming his detention violates the Fifth Amendment's Due Process Clause. Doc. No. 1, ¶¶ 21-26. Specifically, Petitioner asserts that "pursuant to his grant of deferred action [] his current detention is unlawful." *Id.*, ¶ 22. Petitioner acknowledges that the "government's interest in detaining noncitizens during deportation proceedings is to effectuate removal," but asserts that such interest is diminished in his case on account of USCIS' approval of his SIJ petition and issuance of deferred action which he believes reduces "the likelihood the government will be legally permitted to remove him." *Id.*, ¶ 25. As such, Petitioner asks this Court to order his immediate release and to find that his detention violates the Fifth Amendment. *Id.*, PRAYER FOR RELIEF.

### C. Statutory and Regulatory Background Special Immigrant Juvenile Status

"The Immigration and Nationality Act of 1990 included a new form of immigration relief for non-citizen children." *Budhathoki v. Nielsen*, 898 F.3d 504, 508 (5th Cir. 2018). Specifically, "Congress established SIJ status in 1990 in order to protect abused, neglected or abandoned children who, with their families, illegally entered the United States, ... and it entrusted the review of SIJ petitions to USCIS, a component of DHS." *Osorio-Martinez v. Attorney General United States of America*, 893 F.3d 153, 162 (3d Cir. 2018) (quotations and citations omitted). "Rather than being deported along with abusive or neglectful parents, or deported to parents who had abandoned them once in the United States, such children may seek special status to remain in the United States." *Yeboah v. U.S. Dep't of Just.*, 345 F.3d 216, 221

4

(3d Cir. 2003). The applicant bears the burden of proof establishing eligibility. 8 U.S.C. § 1361.

An individual can obtain SIJ classification when the applicant satisfies three statutory requirements. *L.F.O.P. v. Mayorkas*, 656 F. Supp. 3d 274, 276 (D. Mass. 2023). First, the applicant must have "been declared dependent on a juvenile court located in the United States" 8 U.S.C. § 1101(a)(27)(J)(i). Second, the juvenile court must determine that it is not in the applicant's best interest to be returned to the applicant's "previous country of nationality or country of last habitual residence." *Id.* at § 1101(a)(27)(J)(ii). And, third, the Secretary of Homeland Security, acting through USCIS, must "consent[] to the grant of special immigrant juvenile status." *Id.* at § 1101(a)(27)(J)(iii).

An individual who obtains SIJ status receives several important benefits, but is still subject to arrest, detention, and removal from the United States if a final order of removal is entered against such individual. *United States v. Granados-Alvarado*, 350 F. Supp. 3d 355, 357 (D. Md. 2018) (Explaining that while "[t]he SIJ program offers aliens a multitude of benefits and protections, including the opportunity to seek lawful permanent resident status[,] … [i]n and of itself, though, an SIJ designation does not strip the U.S. government of all removal powers.") An individual with SIJ status can apply for adjustment of status if they are eligible, admissible, and an immigrant visa is immediately available. If an application for adjustment of status is granted, the individual receives Lawful Permanent Resident status. 8 U.S.C. § 1255; 8 C.F.R. § 245.1(e)(3)(i). As to an application for adjustment of status, the INA automatically exempts SIJ designees from a set of generally applicable grounds of inadmissibility and provides that other grounds of inadmissibility may be waived at the Attorney General's discretion. 8 U.S.C. §§ 1255(h)(2), 1182(a).

5

Under the INA, to adjust status, "an immigrant visa [must be] immediately available" at the time an application is filed and adjudicated. 8 U.S.C. § 1255(a). In 2022, USCIS recognized that "[d]ue to ongoing visa number unavailability, the protection that Congress intended to afford SIJs through adjustment of status is often delayed for years…". USCIS Policy Alert-2022-10, https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20220307-SIJAndDeferredAction.pdf. As such, USCIS updated its policy guidance "to provide that USCIS will consider granting deferred action on a case-by-case basis to noncitizens classified as SIJs who are ineligible to apply for adjustment of status solely due to unavailable immigrant visa numbers." *Id.*

USCIS made clear, however, that "[n]oncitizens without lawful status who have an approved SIJ petition remain subject to removal" because "SIJ classification does not render a noncitizen lawfully present, does not confer lawful status, and does not result in eligibility to apply for employment authorization." *Id.* USCIS therefore considered individuals with SIJ status for deferred action which USCIS describes "an act of prosecutorial discretion that defers proceedings to remove an alien from the United States for a certain period of time." https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-4. USCIS makes clear, however, that "[d]eferred action does not provide lawful status" and that USCIS "reserves the right to terminate the grant of deferred action and revoke the related employment authorization at any time as a matter of discretion." *Id.*

## JURISDICTION AND STANDARD OF REVIEW

It is axiomatic that "[t]he district courts of the United States . . . are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allopath Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotations omitted). Title 28

U.S.C. § 2241 provides district courts with jurisdiction to hear federal habeas petitions. To warrant a grant of writ of habeas corpus, the burden is on the petitioner to prove that his custody is in violation of the Constitution, laws, or treatises of the United States. *See* 28 U.S.C. § 2241(c)(3); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to an unlawful detention is on the petitioner.").

## ARGUMENT

ICE's detention of Petitioner is authorized by statute and does not offend the Constitution. Additionally, this Court lacks jurisdiction to interfere with ICE's effectuation of Petitioner's removal order pursuant to 8 U.S.C. § 1252(g). For these reasons, this Court must dismiss this Petitioner and vacate its Order enjoining ICE's removal of Petitioner.

### A. Petitioner is Lawfully Detained Pursuant to 8 U.S.C. § 1231.

ICE's detention authority stems from 8 U.S.C. § 1231 which provides for the detention and removal of aliens with final orders of removal. Section 1231(a)(1)(A) directs immigration authorities to remove an individual with a final order of removal within a period of 90 days—this is known as the "removal period." During the removal period, § 1231(a)(2) commands that ICE "shall detain" the final order alien. If, however, the removal period has expired, ICE can either release an individual pursuant to an Order of Supervision as directed by Section 1231(a)(3) or may continue detention under Section 1231(a)(6). Per Section 1231(a)(6), ICE may continue detention beyond the removal period for three categories of individuals:

- Those who are inadmissible to the United States pursuant to 8 U.S.C. § 1182;

- Those who are subject to certain grounds of removability from the United States pursuant to 8 U.S.C. § 1227; or

- Those whom immigration authorities have determined to be a risk to the community or "unlikely to comply with the order of removal."

7

Because Petitioner's prior order of removal was final in 2020, Petitioner is now outside of the 90-day removal period during which the government "shall detain" the individual. 8 U.S.C. § 1231(a)(2). However, 8 U.S.C. § 1231(a)(6) allows ICE to detain Petitioner because he is inadmissible to the United States pursuant to 8 U.S.C. § 1182(a)(6)(A)-(B) on account of his presence in the United States without admission or parole and due to his failure to attend his removal proceedings.

Petitioner sets forth no argument and points to no statute, regulation, or case law that renders his detention unlawful under the INA. Pursuant to the plain language of Section 1231, ICE has statutory authority to detain Petitioner to effectuate his removal order from the United States and he is therefore not entitled to release per statute.

**B.  <u>Petitioner's Detention for Purpose of Removal is Constitutional</u>.**

Petitioner's claim that his detention violates the Constitution is without merit as ICE's detention is for purpose of effectuating his removal order which the Supreme Court in *Zadvydas* has deemed a permissible basis under the Constitution. 533 U.S. at 701. In *Zadvydas*, the Supreme Court set forth a framework for analyzing the Constitutionality of post-final order detention and explained that the "reasonableness" of continued detention under Section 1231(a)(6) should be measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." 533 U.S. at 700. The Court held that post-final order detention under Section 1231 is presumptively reasonable for six months. *Id.* at 701.

Petitioner's Due Process challenge to his detention fails because it is premature as he has been detained for less than two weeks. *See Rodriguez-Guardado,* 271 F. Supp. 3d at 335 ("As petitioner has been detained for approximately two months as of this date, the length of his

8

detention does not offend due process."); *Julce v. Smith*, No. CV 18-10163-FDS, 2018 WL 1083734, at *5 (D. Mass. Feb. 27, 2018) (Habeas petition deemed "premature at best" as it was filed after three months of post-final order detention); *Farah v. U.S. Att'y Gen.*, 12 F.4th 1312, 1332–33 (11th Cir. 2021) (Explaining that "[i]f after six months he is still in custody and has not been removed from the United States, then he can challenge his detention under section 1231(a). But until then, his detention is presumptively reasonable under *Zadvydas*.).

Petitioner mistakenly contends that his detention violates the Fifth Amendment's Due Process Clause because "the likelihood that the government will be legally permitted to remove him is reduced" because USCIS approved his SIJ petition and issued him deferred action through September 2026. Doc. No. 1, ¶ 25. Petitioner sets forth no statute, regulation, or case law that supports his assertion that ICE cannot detain and remove him on account of his final order of removal even if USCIS previously approved his SIJ petition. This is because no such source of authority exists. Instead, as USCIS explains, "SIJ classification does not render a noncitizen lawfully present[] [and] does not confer lawful status." USCIS Policy Alert-2022-10, https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20220307-SIJAndDeferredAction.pdf .

Multiple courts have explained that SIJ designation does not forestall detention and removal from the United States. For example, the U.S. Court of Appeals for the Third Circuit considered, and answered in the affirmative, the question of whether an SIJ recipient "is subject to removal simply for presence in the United States 'without being admitted or paroled.'" *Cortez-Amador v. Att'y Gen.*, 66 F.4th 429, 432 (3d Cir. 2023). In that case, the individual (like Petitioner) was charged as inadmissible from the United States pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) which provides that "[a]n alien present in the United States without being

admitted or paroled, or who arrives in the United States at any time or place other than as

designated by the Attorney General, is inadmissible." While this ground of inadmissibility does

not prevent an SIJ designee from applying for adjustment of status, *see* 8 U.S.C. § 1255(h)(2),

the court found that it does apply for purposes of *removal. Cortez-Amador*, 66 F.4th 433

(emphasis added). In *Cortez-Amador,* the petitioner claimed that because 8 U.S.C § 1225(h)

deems SIJ designees as paroled for purpose of applying for adjustment of status, then the ground

of inadmissibility set forth above could not apply to render him subject to removal from the

United States. *Id.* The Third Circuit disagreed and explained that Section 1255(h) "expressly

states that a noncitizen with SIJS shall be deemed to have been *paroled for purposes of*

*subsection (a)* of that section, i.e. for adjustment of status to a legal permanent resident only."

*Id.* The court explained that "if in § 1255(h) Congress had intended a noncitizen with SIJS to be

deemed paroled for purposes of removal, it would have included reference to removability or 8

U.S.C. § 1182." *Id.* The Third Circuit reasoned that "Congress could have rationally decided

that SIJS recipients should be given the opportunity to apply for adjustment of status, while also

contemplating that they may be removed if their application is denied or for another appropriate

basis." *Id.*, n.11.

Similarly, in *United States v. Granados-Alvarado*, 350 F. Supp. 3d 355, 357 (D. Md.

2018), the court held that "an SIJ designation does not strip the U.S. government of all removal

powers." Instead, the court explained, "the government retained the power to remove Granados-

Alvarado in spite of his SIJ status" because of his inadmissibility to the United States. *Id.* The

court rejected the argument that an SIJ designee is lawful status because of § 1255(h) which

deems an SIJ "paroled into the United States" because that section only applies for the purpose

of applying for adjustment of status. *Id.* at 361. Explained further, "§ 1255(h) does not accord

Granados-Alvarado parolee status for any purposes other than for his application for adjustment of status. ... It does not make his presence lawful ...". *Id.* at 362. *See also, Cruz-Gonzalez on behalf of D.M.S.C. v. Kelly*, No. CV 16-5727, 2017 WL 3390234, at *5 (E.D. Pa. Aug. 7, 2017) (Rejecting argument that SIJ approval grants immigration status and prevents removal from the United States and also agreeing with government's argument that being "deemed paroled" under 8 U.S.C. § 1255(h) "does not cancel a final order of removal or an underlying basis of inadmissibility or removability.").

Here, USCIS' approval of Petitioner's SIJ petition does not provide him with lawful immigration status in the United States and does not bar ICE from effectuating his final order of removal. While Petitioner could have appealed the Immigration Judge's order denying his Motion to Reopen to the Board of Immigration Appeals, he failed to do so. If he was unsuccessful with an appeal to the Board of Immigration Appeals, he could have then sought appellate review before the circuit court. As explained by the First Circuit, the ability to seek relief in the form of a Motion to Reopen that is available "through the administrative process, with judicial review available in the court of appeals ... satisfies due process." *Gicharu v. Carr*, 983 F.3d 13, 19 (1st Cir. 2020) ("The fact that Gicharu failed to establish his entitlement to such relief through his 2015 motion to reopen does not transform the INA's jurisdiction-channeling provisions into a due process violation.")

Additionally, Petitioner's claim that detention is constitutionally infirm because USCIS previously issued him deferred action is without merit. While Petitioner claims that his deferred status demonstrates "proof of legal status" (Doc. No. 1, ¶ 19), USCIS makes clear that "[d]eferred action does not provide lawful status" and that it is instead "an act of prosecutorial discretion that defers proceedings to remove an alien from the United States for a certain period

11

of time." https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-4 . USCIS "reserves the right to terminate the grant of deferred action and revoke the related employment authorization at any time as a matter of discretion." *Id.* Here, ICE has requested USCIS terminate Petitioner's grant of deferred action and upon such termination, ICE will be able to proceed with effectuating Petitioner's removal order.

ICE's detention of Petitioner is authorized by statute and does not violate the Constitution. Petitioner will not face indefinite detention as ICE conducts removals to Guatemala on a routine basis. As such, Petitioner's claim for release must be rejected.

**C. This Court Lacks Jurisdiction to Interfere with Petitioner's Removal from the United States.**

This Court is without jurisdiction to order Petitioner released from ICE custody to prevent his removal from the United States as 8 U.S.C. § 1252(g) precludes a district court from interfering with orders of removal. Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by ... any alien arising from the decision or action by [ICE] to ... *execute removal orders against any alien*." (emphasis added). This provision applies "notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title." *Id.* Section 1252(g) is "directed against a particular evil: attempts to impose judicial constraints upon [certain categories of] prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 n.9 (1999). The Supreme Court explained that Congress imposed jurisdictional limitation in Section 1252(g) "to give some measure of protection to 'no deferred action' decisions and similar discretionary decisions" because "INS's exercise of discretion [to grant deferred action] opened the door to litigation in instances where the INS chose *not* to exercise it." *Id.* at 484-85.

12

Courts within this district, and around the country, routinely hold that they lack jurisdiction to enter an order staying removal based on section 1252(g)'s plain language. *See e.g., Tejada v. Cabral*, 424 F. Supp. 2d 296, 298 (D. Mass. 2006) ("Congress made it quite clear that all court orders regarding alien removal—be they stays or permanent injunctions—were to be issued by the appropriate courts of appeals."); *Aziz v. Chadbourne*, No. CIV.A.07-11806-GAO, 2007 WL 3024010, at *1 (D. Mass. Oct. 15, 2007) ("[a]ny stay of the final order of removal would squarely interfere with the execution of the removal order."); *Martin v. U.S. Immigration & Customs Enf't,* No. CIV.A. 13-11329-DJC, 2013 WL 3282862, at *3 (D. Mass. June 26, 2013) ("this Court lacks authority to issue a stay of a final order of removal."); *Nelson v. Hodgson*, No. CIV.A. 14-10234-DJC, 2014 WL 2207621, at *2 (D. Mass. May 27, 2014) (the "provisions of the REAL ID Act preclude this court from entering an order staying petitioner's removal."); *Doe,* 2018 WL 4696748, at *3 (same); *Compere*, 368 F. Supp. 3d 164, 170 (D. Mass. 2019) (same); *Lopez Lopez v. Charles*, No. 12-CV-101445-DJC, 2020 WL 419598, at *4 (D. Mass. Jan. 26, 2020) (same).

Petitioner's requested relief—an order releasing Petitioner from custody "would necessarily impose a judicial constraint on immigration authorities' decision to execute the removal order, contrary to the purpose of § 1252(g)." *Viana v. President of United States*, No. 18-CV-222-LM, 2018 WL 1587474, at *2 (D.N.H. Apr. 2, 2018), *aff'd sub nom. Viana v. Trump*, No. 18-1276, 2018 WL 11450369 (1st Cir. June 18, 2018).

Courts within this district and elsewhere also routinely held that Section 1252(g) bars jurisdiction to enter a stay of removal when an individual seeks more time to apply for different forms of immigration relief or contends, as Petitioner does here, that removal will render a

13

pending application futile.[2] *See, e.g., Compere*, 368 F. Supp. 3d at 170 (D. Mass. 2019) (court barred from entering stay even though petitioner had application pending); *Viana*, 2018 WL 1587474, at *2 (1252(g) applies despite petitioner's claim that removal "prevents him from seeking potential avenues for relief from removal."); *E.L.F. v. Prim*, 986 F.3d 959, 964 (7th Cir. 2021) (petitioner's challenge to removal while she has a pending application for relief therefrom falls squarely in the path of § 1252(g)); *Garcia-Herrera v. Asher*, No. 13-35435, 585 Fed. App'x 439, 440 (9th Cir. Oct. 6, 2014) (finding that ICE's decision not to delay removal pending the adjudication of petitioner's DACA application constitutes a challenge to ICE's decision to execute a removal order and is barred from review under § 1252(g)).

Respondents respectfully request this Court vacate its Order staying Petitioner's removal immediately so ICE can effectuate Petitioner's removal order.

## CONCLUSION

For the above reasons, Petitioner's assertion of unlawful detention in violation of statute, regulation, and the Constitution fails. As such, this Court should deny his request for release.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: May 23, 2025          By:    */s/ Mark Sauter*
                                    MARK SAUTER

---

[2] While Petitioner claims that "it is anticipated that his visa will be available so he can adjust his status to that of a lawful permanent resident in the near future" (Doc. No. 1, ¶ 18), Petitioner is ineligible to adjust status with a final order of removal in place. 8 U.S.C. § 1229a(b)(7); *C.J.L.G. v. Barr*, 923 F.3d 622, 626 (9th Cir. 2019) ("If the child was the subject of a removal order before obtaining SIJ status, he cannot adjust status unless the IJ also vacates the removal order. *See* 8 U.S.C. § 1182(a)(9)(A)(ii) (providing that a person under a removal order is inadmissible).").

14

Assistant United States Attorneys
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
Tel.: 617-748-3100
Email: mark.sauter@usdoj.gov

## CERTIFICATE OF SERVICE

I, Mark Sauter, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: May 23, 2025                By:        /s/ Mark Sauter
                                              Mark Sauter
                                              Assistant United States Attorney

15