UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

YOVANY RUIZ PRIMERO,    *
                        *
        Petitioner,     *
                        *
        v.              *
                        *
                        *    Civil Action No. 1:25-cv-11442-IT
RALPH MATTIVELO,        *
In his official capacity as Superintendent of    *
Plymouth County Correctional Facility, et    *
al.,

        Respondents.

MEMORANDUM & ORDER

July 9, 2025

TALWANI, D.J.

        Before the court is Petitioner Yovany Ruiz Primero's <u>Petition for Writ of Habeas Corpus</u>

[Doc. No. 1], which asserts that his detention by Immigration and Customs Enforcement ("ICE")

is unlawful because United States Citizenship and Immigration Services ("USCIS") granted him

deferred action after he was approved as a Special Immigrant Juvenile. For the reasons set forth

below, the <u>Petition</u> [Doc. No. 1] is GRANTED in part.

## I.    Special Immigrant Juvenile Status and Deferred Action

        A Special Immigrant Juvenile ("SIJ") is

an immigrant who is present in the United States--

(i) who has been declared dependent on a juvenile court located in the United States
or whom such a court has legally committed to, or placed under the custody of, an
agency or department of a State, or an individual or entity appointed by a State or
juvenile court located in the United States, and whose reunification with 1 or both
of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a
similar basis found under State law;

(ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and

(iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status . . . .

8 U.S.C. § 1101(a)(27)(J). Under the applicable regulations, to be eligible for classification as an SIJ, an applicant must meet all of the following requirements:

(1) Is under 21 years of age at the time of filing the petition;

(2) Is unmarried at the time of filing and adjudication;

(3) Is physically present in the United States;

(4) Is the subject of a juvenile court order(s) that meets [specific requirements]; and

(5) Obtains consent from the Secretary of Homeland Security to classification as a special immigrant juvenile. For USCIS to consent, the request for SIJ classification must be bona fide, which requires the petitioner to establish that a primary reason the required juvenile court determinations were sought was to obtain relief from parental abuse, neglect, abandonment, or a similar basis under State law. USCIS may withhold consent if evidence materially conflicts with the eligibility requirements in paragraph (b) of this section such that the record reflects that the request for SIJ classification was not bona fide. USCIS approval of the petition constitutes the granting of consent.

8 C.F.R. § 204.11(b). An SIJ classification may be revoked if the beneficiary is reunified with one or both parents by juvenile court order, or administrative or judicial proceedings determine that it is in the beneficiary's "best interest to be returned to the country of nationality or last habitual residence of the [individual] or of their parent(s)." Id. § 204.11(j). "USCIS may also revoke an approved petition for classification as a special immigrant juvenile for good and sufficient cause" following written notice to the individual explaining the reasons for the revocation. 8 C.F.R. § 204.11(j)(2); see 8 C.F.R. § 205.2.

SIJs may seek an adjustment of status to "an alien lawfully admitted for permanent residence." See 8 U.S.C. § 1255(a), (h). One of the requirements for an SIJ to obtain an

2

adjustment of status is that an immigrant visa be immediately available at the time of filing the adjustment application. Id. § 1255(a).

However, "[d]ue to ongoing visa number unavailability, the protection that Congress intended to afford SIJs through adjustment of status is often delayed for years[.]" USCIS, Policy Alert PA-2022-10 (Mar. 7, 2022), https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20220307-SIJAndDeferredAction.pdf. In light of this delay, USCIS's policy had been to consider granting deferred action on a case-by-case basis to SIJs who are ineligible to obtain adjustment of status solely due to unavailable immigrant visa numbers. Id. Recently, that policy changed, and currently "USCIS will no longer consider granting deferred action on a case-by-case basis to aliens classified as SIJs who are ineligible to apply for adjustment of status solely due to unavailable immigrant visas." USCIS, Policy Alert PA-2025-07 (June 6, 2025), https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20250606-SIJDeferredAction.pdf. But despite the policy change, "aliens with current deferred action based on their SIJ classification will generally retain this deferred action, as well as retain their current employment authorization provided based on this deferred action, until the current validity periods expire." Id.

Deferred action "is an act of administrative convenience to the government which gives some cases lower priority for removal from the United States for a specific period of time." Notice of Action [Doc. No. 10-1]. USCIS reserves the right to terminate grants of deferred action to SIJs "as a matter of discretion." USCIS, Policy Manual, vol. 6, pt. J., ch. 4 ¶ G.2. Examples of such discretion include where the petition for SIJ classification was approved in error and the petition is revoked, or where the prior deferred action and related employment authorization were granted in error. Id.

3

## II.    Factual Background

Petitioner is a 22-year-old citizen of Guatemala who was brought to the United States by his father as a minor in 2018. Pet. ¶¶ 1, 17 [Doc. No. 1]; Chan Decl. ¶ 8 [Doc. No. 9-1]. On November 9, 2018, when Petitioner was fifteen years old, U.S. Customs and Border Protection ("CBP") arrested Petitioner and his father near El Paso, Texas. Chan Decl. ¶ 8 [Doc. No. 9-1]. CBP issued a Notice to Appear under 8 U.S.C. § 1182(a)(6)(A)(i), and Petitioner and his father were released from ICE custody on an Order of Recognizance. Id. ¶ 9. Following his release, Petitioner failed to appear at immigration court proceedings scheduled for December 18, 2019, and January 22, 2020. Id. ¶ 10. On the latter date, an immigration judge issued an *in absentia* removal order. Id. On or about September 27, 2021, Petitioner filed a motion to reopen with the immigration court, which was denied on August 17, 2022. Id. ¶ 11.

After Petitioner's father abandoned him in the United States, Petitioner submitted an I-360 Special Immigrant Juvenile Petition to USCIS. Pet. ¶ 1 [Doc. No. 1]. USCIS approved Petitioner's application on September 7, 2022, and granted Petitioner deferred action. Id.; Chan Decl. ¶ 12 [Doc. No. 9-1]. Petitioner's Notice of Deferred Action informed him that his grant of deferred action would remain in effect for four years unless terminated earlier by USCIS. Notice of Action [Doc. No. 10-1]. Petitioner has work authorization that is valid through September 7, 2026. Pet. ¶ 18 [Doc. No. 1].

On May 14, 2025, Petitioner accompanied his brother to a court hearing in Waltham, Massachusetts. Id. ¶ 19. Upon leaving the courthouse, Petitioner and his brother stopped for coffee. Id. A law enforcement officer pulled in front of their car and asked for proof of legal status. Id. The officer did not identify himself as an ICE agent. Id. Petitioner provided his work authorization card, which showed that he has deferred action from USCIS. Id. The officer

4

ordered Petitioner out of the car and detained him. Id. Petitioner has been detained by ICE since May 14. Id.

Petitioner filed this Petition for Habeas Corpus [Doc. No. 1] on May 21, 2025. On May 23, 2025, ICE contacted USCIS and "requested that USCIS terminate [Petitioner's] deferred action in order to remove him from the United States on the final order of removal." Chan Decl. ¶ 14 [Doc. No. 9-1]. Neither party contends that USCIS has granted that request.

Petitioner is currently detained at Plymouth County Correctional Facility in Plymouth, Massachusetts. Id. ¶ 15.

### III.    Discussion

A.  *Jurisdiction*

Under 28 U.S.C. § 2241, federal district courts have jurisdiction to determine whether a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(a), (c)(3). Respondents argue that this court lacks jurisdiction to order Petitioner released from ICE custody from the United States because 8 U.S.C. § 1252(g) precludes a district court from interfering with orders of removal. Resp. 12 [Doc. No. 9].

Under 8 U.S.C. § 1252(g):

> [N]otwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision . . . , no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

The Supreme Court has explained, however, that Section 1252(g) is not "a shorthand way of referring to all claims arising from deportation proceedings." Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999). Instead, Section 1252(g) "applies only to three discrete actions that the [Secretary of Homeland Security] may take: her 'decision or

action' to 'commence proceedings, adjudicate cases, or execute removal orders,'" and bars

review of these three discretionary decisions in the deportation process. See id. at 482–84

(emphasis in original). Here, Petitioner is not challenging any of these discretionary decisions.

Instead, he is challenging the Secretary's authority to detain him. Accordingly, the court has

jurisdiction to consider the pending Petition [Doc. No. 1]. See Zadvydas v. Davis, 533 U.S. 678,

688 (2001) (holding that despite jurisdiction stripping provisions, "§ 2241 habeas corpus

proceedings remain available as a forum for statutory and constitutional challenges to post-

removal-period detention.").

     B. *Merits*

     "The burden of proof of showing deprivation of rights leading to unlawful detention is on

the petitioner." Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009) (citations omitted). Petitioner

contends that his current detention violates his Fifth Amendment right to due process and is

unlawful. Pet. ¶¶ 21–26 [Doc. No. 1]. Respondents contend that Petitioner's detention is

authorized by 8 U.S.C. § 1231(a)(6) because Petitioner is inadmissible under 8 U.S.C. § 1182

and was ordered removed, and that his detention does not violate the Constitution because he has

only been detained since May. Resp. 8 [Doc. No. 9]. Petitioner does not dispute that he is

inadmissible under 8 U.S.C. § 1982 but argues that detention beyond the statutory removal

period is not permitted where he has been granted deferred action and that deferred action has

not been revoked. Pet. ¶ 22–26 [Doc. No. 1].

     1.    8 U.S.C. § 1231

        a.    Mandatory Detention

     The detention of a non-citizen who has been ordered removed is addressed in 8 U.S.C.

§ 1231. The statute provides for a "removal period," defined as the 90 days following the latest

of: (1) the date the order of removal becomes administratively final, (2) the date of a final order

of a judicially reviewable removal order (if the court stayed the removal of the alien), or (3) the

date the alien is released from detention (other than under an immigration process). 8 U.S.C.

§ 1231(a)(1)(A), (B). The statute specifies further that the removal period may be extended in

certain circumstances, "such that an alien remains detained after 90 days have passed." Johnson

v. Guzman Chavez, 594 U.S. 523, 528 (2021) (emphasis added). One of these circumstances is

where the alien fails or refuses to make timely application in good faith for travel or other

documents necessary to the alien's departure or acts to prevent his removal. Id.; see 8 U.S.C.

§ 1231(a)(1)(C). The statute provides that during the removal period (or extended removal period

under § 1231(a)(1)(C)), detention is mandatory. 8 U.S.C. § 1231(a)(2)(A) ("During the removal

period, the Attorney General shall detain the alien.") (emphasis added).

Here, where the Order of Removal was entered on January 22, 2020, see Chan Decl. ¶ 10

[Doc. No. 9-1], the mandatory detention removal period has long ended. Respondents do not

disagree. See Resp. 8 [Doc. No. 9] ("Petitioner is now outside of the 90-day removal period

during which the government 'shall detain' the individual.").

      b.     Permissive Detention

The statute allows DHS to detain a non-citizen "beyond the removal period" in certain

circumstances, including where the non-citizen ordered removed is inadmissible under 8 U.S.C.

§ 1182. 8 U.S.C. § 1231(a)(6); see also Johnson, 594 U.S. at 528. However, detention under

Section 1231(a)(6) is not mandatory. See 8 U.S.C. § 1231(a)(6) (the individual "may be

detained" and "if released, shall be subject to the terms of supervision in paragraph (3)").[1]
Respondents rely on this provision for the detention here. Resp. 8 [Doc. No. 9].

      2.      Constitutional Due Process

      Petitioner claims that his detention violates the Due Process Clause of the Fifth
Amendment in light of his grant of deferred action. Pet. ¶¶ 22–26 [Doc. No. 1]. The Fifth
Amendment's Due Process Clause protects the right of all persons to be free from "depriv[ation]
of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is well
established that the Fifth Amendment entitles aliens to due process of law[.]" Trump v. J. G. G.,
604 U.S. __, 145 S. Ct. 1003, 1006 (2025) (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)).
"Freedom from imprisonment—from government custody, detention, or other forms of physical
restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533
U.S. at 690.

      Respondents contend that detaining Petitioner for the purpose of effectuating his removal
is permissible under the Due Process Clause at this stage because Zadvydas makes detention
under § 1231(a)(6) "presumptively reasonable and constitutional for six months to allow
enforcement of a removal order." Resp. 2 [Doc. No. 9]. Zadvydas considered whether Section
1231(a)(6) authorizes the Secretary of Homeland Security "to detain a removable alien
indefinitely beyond the removal period or only for a period reasonably necessary to secure the
alien's removal." 533 U.S. at 682 (emphasis omitted). The Court concluded that detention of an

---

[1] Under 8 U.S.C. § 1231(a)(3), if the individual subject to an order of removal "is not removed
within the removal period, the alien, pending removal, shall be subject to supervision under
regulations prescribed by the [Secretary of the Department of Homeland Security]."

individual beyond the 90-day removal period under 8 U.S.C. § 1231(a)(6) is limited to "a period reasonably necessary to bring about" the individual's removal from the United States. Id. at 689. Such detention is presumptively reasonable for up to six months. Id. at 701. Reasonableness is measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." Id. at 699. If removal is not reasonably foreseeable, continued detention is unreasonable and no longer authorized by statute. Id. at 699–700. Consequently, "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. at 701.

The procedural posture of the petitioners' claims in Zadvydas differs from the instant petition in two critical ways. First, the Zadvydas Court was considering the question of indefinite detention, not an initial detention decision. Relatedly, the petitioners in Zadyvas had previously been afforded discretionary review of their detention. See Zadvydas v. Underdown, 185 F.3d 279, 283 (5th Cir. 1999) (immigration judge ordered that Zadvydas should be detained without bond during deportation process based on history of flight from authorities); Zadvydas, 533 U.S. at 685–86 (Immigration and Naturalization Service ("INS") detained other petitioner, Kim Ho Ma, because, in light of former gang membership, nature of crime, and planned participation in prison hunger strike, INS was "unable to conclude that Mr. Ma would remain nonviolent and not violate the conditions of release"); see also Zadvydas, 533 U.S. at 683 (explaining that under INS regulations "the INS District Director will initially review the alien's records to decide whether further detention or release under supervision is warranted after the 90-day removal period expires. If the decision is to detain, then an INS panel will review the matter further, at the expiration of a 3-month period or soon thereafter.") Petitioner here, in contrast, has been afforded no review of his detention. To the contrary, Respondents have made no suggestion that

there has been any review of Petitioner's record to determine that his detention was warranted to ensure his removal; instead, Petitioner's detention was "the result of an enforcement action targeting a third party." Chan Decl. ¶ 13 [Doc. No. 9-1].

Second, the petitioners in Zadvydas had final orders of removal without any subsequent grant of deferred action or other relief from enforcement of the order. Here, USCIS has granted Petitioner deferred action that remains valid through September 2026 or until it is otherwise terminated. See Notice of Action [Doc. No. 10-1]. ICE has requested that USCIS terminate Petitioner's deferred action in order to remove him from the United States, but there is no indication in the record that USCIS has granted ICE's request to date. See Chan Decl. ¶ 14. Moreover, under USCIS's most recent policy, despite other changes, "aliens with current deferred action based on their SIJ classification will generally retain this deferred action, as well as retain their current employment authorization provided based on this deferred action, until the current validity periods expire." USCIS, Policy Alert PA-2025-07 (June 6, 2025), https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20250606-SIJDeferredAction.pdf. And although ICE "routinely removes individuals to Guatemala," Chan Decl. ¶ 16, Respondents do not suggest that ICE routinely removes individuals with active grants of deferred action from the United States, or that Petitioner will be removed before his deferred action is terminated.

Therefore, where Petitioner has shown that USCIS granted him deferred action that will remain valid until September 7, 2026, in the absence of early termination and early termination has not occurred, and where there is no indication that Petitioner's case was reviewed prior to or since detaining him, Petitioner has shown that there is no significant likelihood of his removal in

the reasonably foreseeable future. Accordingly, the government may not rely on the presumptive period of permissible detention under <u>Zadvydas</u> and must afford Petitioner a bail hearing.

In addition, DHS's detailed regulations provide for custody determinations to be made where an individual is detained beyond the removal period. 8 C.F.R. § 241.4. A decision to retain custody beyond the removal period must "briefly set forth the reasons for the continued detention." <u>Id.</u> § 241.4(d). Petitioner is constitutionally entitled to this process.

**IV.    Conclusion**

For the foregoing reasons, Petitioner's <u>Petition for Writ of Habeas Corpus</u> [Doc. No. 1] is GRANTED in part as follows: Within seven days of this order, Petitioner must be provided a bail hearing. Any decision to retain Petitioner in custody following the bail period shall set forth the reasons for the continued detention.

IT IS SO ORDERED.

July 9, 2025                                   /s/Indira Talwani_____
                                              United States District Judge